CULLEN AND DYKMAN LLP
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
Ralph E. Preite, Esq.
T: (516) 357-3700
M: (212) 380-6878
F: (516) 357-3792
rpreite@cullenllp.com
    and
Michelle McMahon, Esq.
Kyriaki Christodoulou, Esq.
One Battery Park Plaza, 34th Floor
New York, New York 10004
(212) 701-4170
mmcmahon@cullenllp.com
kchristodoulou@cullenllp.com

*Counsel for New London Pharmacy Inc., Debtor.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>    New London Pharmacy Inc.,<br><br>                             Debtor. | **Chapter 11**<br><br>Case No. 25-10107 (JPM) |
| NEW LONDON PHARMACY, INC.,<br><br>                             Plaintiff,<br><br>-against-<br><br>OMONOIA SOCIETY OF KASTORIANS INC. D/B/A THE SOCIETY OF KASTORIANS "OMONOIA",<br><br>                             Defendant. | Adv. Proc. No. 25 - _____ |

**COMPLAINT FOR TURNOVER AND STAY VIOLATION**

      New London Pharmacy, Inc., debtor and debtor in possession in the above-captioned

chapter 11 case, and plaintiff in the above-captioned adversary proceeding ("Debtor" and

1

"Plaintiff") by its attorneys Cullen and Dykman LLP, as and for its turnover and stay violation complaint ("Complaint") against the *Omonoia Society Of Kastorians Inc. D/B/A The Society of Kastorians "Omonoia",* defendant ("Defendant" or "Kastorians"), respectfully alleges as follows:

## PARTIES

1. The Debtor is a New York corporation incorporated on January 29, 1960.

2. The Debtor operates a neighborhood retail pharmacy which has been serving the Chelsea community since 1960.

3. For approximately 50 years, the Debtor has occupied the first floor and basement of 246-248 Eighth Avenue, New York, New York, which is a three-story building located in Chelsea and where the Defendant serves as the Debtor's landlord.

4. The Debtor's sister company, Eleni International, Inc.,[1] ("Eleni", together with New London, the "Pharmacies") operates on the second floor of the subject building and manages the compounding and mixing of the specialty medicines which the Debtor sells.

5. The Debtor is planning to relocate its business to another location possibly nearby because the Defendant has obtained a decision and order dated December 6, 2024 from the New York Civil Court (index no. LT-302891-22/NY) (the "LT Action") granting the Defendant possession and entitlement to rent arrears because, since the early part of the Covid 19 pandemic in mid-2020 the Debtor has paid with permission, and the Defendant accepted monthly, approximately 50% of the rent called for under the lease for the subject premises. However, the Defendant subsequently reneged on its agreement and denied the arrangement. The Debtor

---

[1] Eleni International Inc. is New London's sister company, a debtor in a related Chapter 11 bankruptcy case filed on January 23, 2025 in the United States Bankruptcy Court, Southern District of New York, bearing case number 25-10108.

2

intends to appeal said decision.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

6. In this adversary proceeding, the Debtor seeks (i) judgment pursuant to sections 105, 362, 541 and 542 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), for release of a restraint and turnover of property of the Debtor's bankruptcy estate including use of and access to its operating bank accounts and the funds therein which the Defendant restrained on January 23, 2025 causing the Debtor's business to grind to a halt and preventing Debtor from transacting business, including filling prescriptions and satisfying post-petition payables with which to purchase medicines to fill, ***among others***, its customers' prescriptions for weekly-prescribed Spravato anti-suicidal medicine which costs the Debtor $2,400.00 per dose per patient; (ii) declaratory and related relief, including both compensatory and punitive damages, by reason of Defendant's knowing and willful violation of the automatic stay provisions contained in section 362(a)[2]; and (iii) recovery of both compensatory and punitive damages by reason of Defendant's knowing and willful conversion of property of the bankruptcy estate.

7. Plaintiff seeks turnover by Defendant and release of Defendant's restraints on Plaintiff's bank accounts bearing account no. 752587001 and no. 557189375, which the Debtor New London maintains at Chase Bank[3] (the "New London Accounts"), which are property of the respective estates and which Defendant through New York City Marshal Edward F. Guida Jr. #14

---

[2] The relief which the Debtor seeks under section 362(a) is not the relief addressed by the U.S. Supreme Court's decision in *City of Chicago, Illinois v. Fulton*, 141 S.Ct 585 (2021).

[3] In a parallel adversary proceeding commenced by Eleni simultaneously hereto, Eleni seeks turnover by Defendant and release of Defendant's restraints on Eleni's bank account bearing account no. 557198756, which Eleni maintains at Chase Bank (the "Eleni Account", together with the New London Accounts, the "Bank Accounts").

3

<u>restrained</u> on January 23, 2025. Turnover and release of the restraints will allow the Debtor to access the funds therein to maintain and operate its business and to operate the accounts to make payments to its vendors for post-petition transactions to acquire medicines.

8. On January 23, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Hours earlier on January 23, 2025, the aforesaid NYC Marshal restrained the Bank Accounts causing the Debtor's business to come to a grinding halt and preventing it from providing routine medicine prescriptions ***plus*** critical care heart medicine, HIV medicine and anti-suicide medicine and other lifesaving medicines. The Defendant's seizure of the Bank Accounts has catastrophic business impacts and real meaningful life or death consequences for the Debtor's customers.

9. The Defendant's restraint on the Bank Accounts has and continues to capture more funds post-petition.

10. The Defendant's restraint on the Bank Accounts significantly impacts the Debtor's ability to continue operating while in bankruptcy.

11. The Defendant's seizure of Bank Accounts has catastrophic consequences for the Debtor's business and life or death risks to the Debtor's customers.

12. The freeze on the Bank Accounts prevents monies deposited into the account from being used by the Debtor to operate its business and access the capital it needs to pay for the medications it sells.

13. The Defendant's seizure of the Bank Accounts to enforce its approximately $2 million civil court landlord-tenant judgment has created a negative $2.5 million balance in the account causing all monies in the accounts to be unavailable for use and leaves the Debtor without the necessary capital to pay for critical medications. These medications include, as

4

mentioned above, HIV drugs, drugs for heart disease, and Spravato.

14. The Debtor is the owner of the New London Accounts and the funds therein were generated by its business sales operations when the accounts were seized ("Pre-Petition Sale Proceeds") and constitute property of the Debtor's estate but are not available to the Debtor to operate its business.

15. Additionally, the funds deposited into the New London Accounts post-petition by insurance companies, Medicaid, Medicare, credit card processing companies and others, from the Debtor's business sales operations (the "Post-Petition Sale Proceeds") also constitute property of the Debtor's estate but are not available to the Debtor to operate its business. None of the deposits in the New London Accounts have been turned over to the Debtor by Defendant.

16. The inability to purchase medicines is causing the debtor to lose its customer base of physicians and doctors' offices which refer their patients to the Debtor to fill prescriptions, and of course, causing the Debtor to lose the customers themselves.

17. The Pharmacies and their pharmacists had worked diligently and tirelessly to procure the Spravato account, *i.e.* physicians who treat patients with Spravato. Because it is a highly regulated drug, not all pharmacists are qualified to provide it. Spravato costs approximately $1,200 per bottle. A weekly supply is comprised of 2 bottles for a total wholesale cost of $2,400 per week. Now, because of the Defendant's actions, the Pharmacies cannot pay for prior orders placed for the drug, nor can they place new orders for which wholesale suppliers require payment. As a result, the Pharmacies have had to turn away numerous fill-requests from their physician partners who have now sent their patients and prescriptions to other pharmacies.

18. Upon information and belief, the Pharmacies have lost thousands of dollars in profit since the Thursday January 23, 2025 Bank Accounts seizure, and counting, and face long-

term loss of critical business accounts and damaged relationships with physicians' offices that the Pharmacies had worked hard to establish, build and maintain.

19. The Landlord's seizure of the New London Accounts has resulted in serious interruptions in the Debtor's patient care and operations, amplifying the overall financial stress of the Debtor, and creating and exacerbating further reputational damage.

20. The following is an approximate summary of the damage caused by the Defendant's seizure of the Bank Accounts on Thursday January 23, 2025.

**A. New London Pharmacy**

21. Since Thursday January 23, 2025, fifty-four (54) patients were not serviced in both Pharmacies.

22. On Thursday January 23, 2025, four (4) patients were transferred out of New London to a competitor, with a resulting loss of $700 in revenue approximately. All four (4) patients were heart patients taking blood thinners and CHF medications which the Debtor has provided until that day but could no longer provide because the Bank Accounts seizure prevented New London from buying the subject medicine.

23. On Friday January 24, 2025, eight (8) patients were transferred out of New London to a competitor resulting in a loss of approximately $2,200 in revenue. All eight (8) patients were HIV patients.

24. On Saturday January 25, 2025, seven (7) patients were transferred out of New London to a competitor, resulting in a loss of approximately $1,200 in revenue. Two of these seven patients were diabetic, taking insulin and other drugs.

25. On Sunday January 26, 2025, two (2) patients could not receive their HIV medications from New London. One (1) patient required three HIV medications. The cost of

6

these drugs was $8,000 and profit would have been $900. Both patients were transferred out to a competitor.

26. HIV medications costs approximately $2,300 to $3,800. The nature of the medications requires that HIV patients must not experience interruptions in taking their medicines. These patients are monthly patients who pick up medication in a timely manner and expect New London to have the medications available and in stock.

**B. Eleni International Inc. d/b/a New London Specialty Pharmacy**

27. Thirty-two (32) patients were relying on Eleni to have their medication delivered to their doctors' offices on Saturday January 25, 2025 and Monday January 27, 2025. This medication, Spravato, is only to be administered by physicians. Spravato treats resistant depression with suicidal thoughts or actions.

28. Each patient with a Spravato prescription receives two (2) bottles of Spravato (cost $2,400). The profit from a Spravato prescription is $400. Therefore, for the thirty-two (32) aforesaid patients, the profit would have been $400 x 32 patients = $12,800. Spravato is Eleni's main source of profit, and a very good weekly profit at that.

29. Since Eleni could not provide the drug, the physicians' offices were forced to use a different pharmacy, and not Eleni. Therefore, not only did the Pharmacies lose the patients' prescription sales these past four (4) days, but also lost the particular physician's office which has sent the Pharmacies up to eight (8) – twelve (12) patients. Since Thursday January 23, 2025, the Pharmacies have lost four (4) of their partner physicians' offices because they were unable to provide the Spravato drug for their appointments. The Pharmacies will not have a second chance with this medication or the doctors' offices which prescribe the medicines. The doctors' offices require the drug to be delivered by the issuing pharmacy on the day of the appointment with the

7

patient.

30. It took the Pharmacies months to build the trust of the doctors' offices or patients using this medicine. Losing these patients in both Pharmacies negatively affects their business in the long run, in addition to the lost short-term profits. The Debtor's reputation is at risk; physicians' offices will be hesitant to trust and rely on the Pharmacies a second time. It is imperative that the Pharmacies regain their operating Bank Accounts to resume operations and salvage remaining existing customers, patients and doctors' offices.

31. Moreover, as health care professionals, the Pharmacies have a responsibility to properly service the patient and/or doctor. The Defendant's Bank Accounts hold has prevented the Pharmacies from honoring their obligations.

## **NOTICE OF THE CHAPTER 11 BANKRUPTCY AND AUTOMATIC STAY**

32. The Debtor has been and is the owner of the Bank Accounts and their use and the funds therein when seized January 23, 2025 (*i.e.* the Pre-Petition Sale Proceeds), as well as those funds deposited thereafter from post-petition business operations (*i.e.* the Post-Petition Sale Proceeds) constitute property of the Debtor's estate. None of the Pre-Petition Sale Proceeds or the Post-Petition Sale Proceeds have been turned over to the Debtor by Defendant.

33. In the morning of January 24, 2025, the NYC Marshal was advised of this Chapter 11 filing and the automatic stay by letter and backup filing proof that was emailed and/or faxed to the NYC Marshal. Debtor's counsel followed up by phone call to the NYC Marshal (via a phone call to Lina in the marshal's office) to advise of the faxed and emailed notice of the stay and requested a release of the restraint on the Bank Accounts, but the Marshal's response was to phone counsel for the Defendant.

34. On Friday January 24, 2025 the undersigned then phoned Kyriakos "Kirk"

8

Karabelas, Esq., Defendant's counsel and advised the restraint on the Bank Accounts must be released immediately because the Debtors cannot fill medicine prescriptions, to which Mr. Karabelas replied he was not going to make it easy for the Debtor or its management and shareholders. He then asked "how much did I get" to which counsel relied approximately $30,000.00. Mr. Karabelas ignored the issue of filling prescriptions by the Debtors.

35. In Whitestone Queens, NY on Saturday January 25, 2025, in a mid-day settlement meeting with the Defendant landlord (i.e., the Kastorians Executive Board[4] members, Mr. Christos Yioves, President and Mr. John Psaltos, Vice President), the Debtor's Vice President, Ms. Abby Fazio, Ms. Fazio asked them to release the restraints on the Bank Accounts, and advised the two men that their restraints on the Bank Accounts had many deleterious effects on the Pharmacies and their customer patients, including:

- Prevented Pharmacies from filling prescriptions.
- Caused patients to forego medicines including anti-suicide medicines.
- Prevented Pharmacies from conducting business.
- Prevented Pharmacies from generating revenue.
- Collected Post-Petition Sale Proceeds in addition to the Pre-Petition Sale Proceeds seized on January 23, 2025 because insurance companies, Medicare, Medicaid, and payment processing systems including credit card processors, continue to deposit funds into those accounts.

36. The two representatives from the Defendant did not address the request to release the restraint on the Bank Accounts. One of them, the President, berated Ms. Fazio regularly during the meeting.

37. Additionally, on Sunday, January 26, 2025, New London, by and through counsel, filed a *Notice of Chapter 11 Bankruptcy* dated January 26, 2025, in the LT Action.

---

[4] See **Society of Kastorians "OMONOIA" Board of Directors** listing at https://kastoria.us/men-board-of-directors/ for said names.

24083.1 21309150v2

## NATURE OF THIS ADVERSARY PROCEEDING

38.  Plaintiff seeks turnover by Defendant and release of Defendant's restraints on the New London Accounts, with accounts no. 752587001 and 557189375 which the New London maintains at Chase Bank, and which are property of the Debtor's estate, and which Defendant through New York City Marshal Edward F. Guida Jr. #14. <u>restrained</u> on January 23, 2025. The Debtor seeks a full release of said restraints on the New London Accounts so that the Debtor:

   a. immediately regains full use of and access to the New London Accounts;
   b. immediately regains full use of and access to the Pre-Petition Sale Proceeds and the Post-Petition Sale Proceeds;
   c. Immediately regains full use of and access to the New London Accounts so that the Debtor may resume electronic payments to its wholesaler suppliers for medicines the Debtor requires to purchase daily to fill new and recurring prescriptions of its patient customers.

39.  The New London Accounts are property of the Debtor's estate under section 541 of the Bankruptcy Code.

## JURISDICTION, VENUE AND STATUTORY PREDICATES FOR RELIEF

40.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(b) and the Standing Order of Reference of the United States District Court for the Southern District of New York under which this adversary proceeding is automatically referred to this Court.

41.  Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(a) because this proceeding is a case arising under, and is in connection with, a case under title 11 of the United States Code.

42.  This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (E) for the Court to hear and determine this adversary proceeding. The claims asserted include, *inter alia*, proceedings to recover property of the estate and automatic stay violations. Plaintiff

10

consents to entry of final judgment in this action by the Bankruptcy Court.

43. This adversary proceeding is commenced pursuant to Rule 7001 *et seq*. of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Sections 105(a), 362, 541, and 542 of the Bankruptcy Code.

### **FIRST CLAIM FOR RELIEF AGAINST DEFENDANT**
(Turnover of Estate Property Pursuant
to Section 542 of the Bankruptcy Code)

44. The Debtor hereby incorporates all previous allegations set forth above in this Complaint as though fully set forth herein.

45. The balances in the New London Accounts including the Pre-Petition Sale Proceeds, as well as Post-Petition Sale Proceeds, and the unimpeded use of the New London Accounts to operate its business, constitute property of the Debtor's bankruptcy estate as provided for in section 541 of the Bankruptcy Code.

46. The New London Accounts and the funds therein are undisputed property of the Debtor's estate.

47. During this case, the Defendant landlord which is not a custodian, has a restraint on the New London Accounts, which contain approximately $106,0000.00, and the funds therein and is thus in in possession, custody, or control of property that the Debtor could use, sell, or lease, and that such property is not of inconsequential value or benefit to the estate.

48. The Defendant, notwithstanding demand having been made therefor on behalf of the Debtor, has failed to turn over to the Debtor and release its restraint on the New London Accounts, including their use and the Pre-Petition Sale Proceeds, as well as Post-Petition Sale Proceeds.

49. The restraint placed by Defendant on the New London Accounts is a preferential

11

transfer of an interest in the Debtor's property, and it was placed approximately 24 hours before the Petition Date while insolvent, and is thus subject to claw back by the Debtor pursuant to section 547 of the Bankruptcy Code.

50. Based on the foregoing, and pursuant to section 542 of the Bankruptcy Code, the Defendant must release its restraint on the New London Accounts to allow full, unencumbered use by the Debtor and turn over to the Debtor the Pre-Petition Sale Proceeds, as well as Post-Petition Sale Proceeds, which are in an amount on deposit in the New London Accounts, together with interest thereon.

### SECOND CLAIM FOR RELIEF AGAINST DEFENDANT
*(Termination of Restraints on Bank Accounts due to Stay Violation Under §362(a)(3) of the Bankruptcy Code due to altering the Status Quo)*

51. The Debtor hereby incorporates all previous allegations set forth above in this Complaint as though fully set forth herein.

52. The Debtor's use of the New London Accounts in the ordinary course of business is crucial to the Debtor's continued operations of its pharmacy business.

53. This includes the filling of prescriptions, and the buying of medicines to fulfil prescriptions and to pay the Debtor's wholesale suppliers for the medicines it orders daily, as well as operating expenses, including payroll.

54. Defendant's continued restraint on the New London Accounts restrains the Debtor's Post-Petition Sale Proceeds as well as the Pre-Petition Sale Proceeds.

55. Since the Petition Date, the deposits in the Bank Account have grown with Post-Petition Sale Proceeds from approximately $30,000 to $106,125.86 as of January 27, 2025.

56. Maintaining the status quo may not be a violation of section 362(a)(3) of the Bankruptcy Code. However, allowing the restraint to permit continued garnishment or restraint

*of the Debtor's post-petition funds, i.e., Post-Petition Sale Proceeds, alters the status quo and is thus deemed a stay violation.[5]*

*57. Under the facts and circumstances of this case, the Defendant was required to either stay or dissolve its restraint to prevent the continued post-petition garnishment or restraint of funds. As deposits continued to be made into the Debtor's Bank Account, the status quo was altered because the Post-Petition Sale Proceeds are being restrained by the restraint.*

*58. Defendant's restraint of Post-Petition Sale Proceeds, as it relates to Bankruptcy Code section 362(a)(3), expands beyond the narrow confines set forth by the U.S. Supreme Court in City of Chicago, Illinois v. Fulton, 592 U.S. 154, 158, 141 S.Ct. 585 (2021) of maintaining the status quo.*

*59. The Defendant, notwithstanding demand having been made therefor on behalf of the Debtor, has failed to turn over to the Debtor the Pre-Petition Sale Proceeds, as well as Post-Petition Sale Proceeds, and access to the New London Accounts.*

*60. Based on the foregoing, and the Defendant's violation of section 362(a)(3) of the Bankruptcy Code, such stay violation must be stopped by this Court which should issue an order terminating the subject restraint and/or directing the Defendant and its agent NYC Marshal to terminate the subject restraint so that Eleni has full access to the Pre-Petition Sale Proceeds, the Post-Petition Sale Proceeds and full access to the New London Accounts for use in the ordinary course of business immediately.*

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT
*(Termination of Restraints on Bank Accounts due to Stay Violation Under §362(a)(2) of the Bankruptcy Code for post-petition enforcement against estate property for a judgment obtained pre-petition)*

---

[5] See *In re Namen*, 649 B.R. 603, 612 (Bankr. M.D. Fl 2023). See also *City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 158, 141 S.Ct. 585 (2021) (maintenance of the status quo is what precludes violation of 362(a)(3)).

13

24083.1 21309150v2

61. The Debtor hereby incorporates all previous allegations set forth above in this Complaint as though fully set forth herein.

62. The Debtor's use of the New London Accounts in the ordinary course of business is crucial to the Debtor's continued operations of its pharmacy business.

63. This includes the filling of prescriptions, and the buying of medicines to fulfil prescriptions and to pay the Debtor's wholesale suppliers for the medicines it orders daily, as well as operating expenses, including payroll.

64. Defendant's continued restraint on the New London Accounts restrains the Debtor's Post-Petition Sale Proceeds as well as the Pre-Petition Sale Proceeds.

65. Since the Petition Date, the deposits in the Bank Account have grown with Post-Petition Sale Proceeds from approximately $30,000 to $106,125.86 as of January 27, 2025.

66. Allowing the restraint to permit continued or restraint of the Debtor's post-petition funds, i.e., Post-Petition Sale Proceeds, is a violation of the section 362(a)(2) of the bankruptcy Code's automatic stay because it is Defendant's enforcement, against the Debtor or and also against property of the estate, of a judgment obtained December 6, 2024 prior to the commencement of this bankruptcy case.

67. Defendant's restraint of Post-Petition Sale Proceeds, as it relates to Bankruptcy Code section 362(a)(2), is a violation of the automatic stay.

68. The Defendant, notwithstanding demand having been made therefor on behalf of the Debtor, has failed to turn over to the Debtor the Pre-Petition Sale Proceeds, as well as Post-Petition Sale Proceeds, and access to the New London Accounts.

69. Based on the foregoing, <u>and</u> the Defendant's violation of section 362(a)(2) of the Bankruptcy Code, such stay violation must be stopped by this Court which should issue an order

14

terminating the subject restraint and/or directing the Defendant and its agent NYC Marshal to terminate the subject restraint so that Eleni has full access to the Pre-Petition Sale Proceeds, the Post-Petition Sale Proceeds and full access to the New London Accounts for use in the ordinary course of business immediately.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT
(Termination of Restraints on Bank Accounts due to Stay Violation Under §362(a)(1) of the Bankruptcy Code for post-petition continued employment of process against the debtor to recover pre-petition claims)

70. The Debtor hereby incorporates all previous allegations set forth above in this Complaint as though fully set forth herein.

71. The Debtor's use of the New London Accounts in the ordinary course of business is crucial to the Debtor's continued operations of its pharmacy business.

72. This includes the filling of prescriptions, and the buying of medicines to fulfil prescriptions and to pay the Debtor's wholesale suppliers for the medicines it orders daily, as well as operating expenses, including payroll.

73. Defendant's continued restraint on the New London Accounts restrains the Debtor's Post-Petition Sale Proceeds as well as the Pre-Petition Sale Proceeds.

74. Since the Petition Date, the deposits in the Bank Account have grown with Post-Petition Sale Proceeds from approximately $30,000 to $106,125.86 as of January 27, 2025.

75. Allowing the restraint to permit continued or restraint of the Debtor's post-petition funds, i.e., Post-Petition Sale Proceeds, is a violation of the section 362(a)(1) of the bankruptcy Code's automatic stay because it is Defendant's continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the Debtor that was or could have been commenced before the commencement of the case under this

15

*title, or to recover a claim against the Debtor that arose before the commencement of the case under this title.*

76. *Defendant's restraint of Post-Petition Sale Proceeds, as it relates to Bankruptcy Code section 362(a)(1), is a violation of the automatic stay.*

77. *The Defendant, notwithstanding demand having been made therefor on behalf of the Debtor, has failed to turn over to the Debtor the Pre-Petition Sale Proceeds, as well as Post-Petition Sale Proceeds, and access to the New London Accounts.*

78. *Based on the foregoing, and the Defendant's violation of section 362(a)(1) of the Bankruptcy Code, such stay violation must be stopped by this Court which should issue an order terminating the subject restraint and/or directing the Defendant and its agent NYC Marshal to terminate the subject restraint so that Eleni has full access to the Pre-Petition Sale Proceeds, the Post-Petition Sale Proceeds and full access to the New London Accounts for use in the ordinary course of business immediately.*

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT**
(Conversion of Estate Property)

79. The Debtor hereby incorporates all previous allegations set forth above in this Complaint as though fully set forth herein.

80. As a result of all of the foregoing, the Defendant has willfully, knowingly and wrongly converted property belonging to the Debtor's estate, namely the New London Accounts, their full unencumbered use by the Debtor to duly operate its business, and the funds deposited therein comprising of the Pre-Petition Sale Proceeds and the Post-Petition Sale Proceeds, to the exclusion and detriment of the Debtor, and have therefore improperly exercised dominion and control over such property.

81. As a result of said wrongful conversion of the estate's property by the Defendant,

16

the Debtor is entitled to an award of: (i) damages in an amount to be determined at trial, together with interest thereon; and (ii) of punitive damages in an amount to be determined by this Court.

## RESERVATION OF RIGHTS

82. The Debtor hereby expressly reserves the right to amend and/or supplement either the factual bases and/or the relief requested in this Complaint.

WHEREFORE, the Debtor demands judgment against the Defendant on its claims for relief as set forth herein as follows:

A. On the First Claim for Relief, pursuant to section 542 of the Bankruptcy Code, directing the Defendant and its agents including the NYC Marshal to release its restraint on the New London Accounts to allow full unencumbered use by the Debtor and turn over to the Debtor the Pre-Petition Sale Proceeds, as well as Post-Petition Sale Proceeds, which are in an amount on deposit in the New London Accounts, together with interest thereon.

B. On the Second Claim for Relief, (i) a declaratory judgment that Defendant has violated the automatic stay under section 362(a)(3) of the Bankruptcy Code; (ii) an order enforcing the automatic stay and enjoining Defendant from continued restraint of the New London Accounts, as well as the Pre-Petition Sale Proceeds, and Post-Petition Sale Proceeds and enjoining the Defendant from restraining the New London Accounts so full access to the New London Accounts be restored immediately by releasing its restraint immediately; (iii) damages for stay violation and for consequential damages, in an amount to be determined at trial, together with interest thereon; and (iv) punitive damages in an amount to be determined by the Court;

C. On the Third Claim for Relief, (i) a declaratory judgment that Defendant has violated the automatic stay under section 362(a)(2) of the Bankruptcy Code; (ii) an order enforcing the automatic stay and enjoining Defendant from continued restraint of the New London Accounts, as well as the Pre-Petition Sale Proceeds, and Post-Petition Sale Proceeds and enjoining the Defendant from restraining the New London Accounts so full access to the New London Accounts be restored immediately by releasing its restraint immediately; (iii) damages for stay violation and for consequential damages, in an amount to be determined at trial, together with interest thereon; and (iv) punitive damages in an amount to be determined by the Court;

D. On the Fourth Claim for Relief, (i) a declaratory judgment that Defendant has violated the automatic stay under section 362(a)(1) of the Bankruptcy Code; (ii) an order enforcing the automatic stay and enjoining Defendant from continued restraint of the New London Accounts, as well as the Pre-Petition Sale Proceeds, and Post-Petition Sale Proceeds and enjoining the Defendant from restraining the New London

    Accounts so full access to the New London Accounts be restored immediately by releasing its restraint immediately; (iii) damages for stay violation and for consequential damages, in an amount to be determined at trial, together with interest thereon; and (iv) punitive damages in an amount to be determined by the Court;

E. On the Fifth Claim for Relief, awarding judgment in favor of the Debtor for: (i) damages in an amount to be determined at trial, together with interest thereon; and (ii) punitive damages in an amount to be determined by this Court;

F. Awarding the Debtor the reasonable costs and disbursements incurred in connection with this adversary proceeding; and

G. Granting any additional relief that this Court deems just and equitable.

Dated: New York, New York  
       January 27, 2025

CULLEN AND DYKMAN LLP  
*Proposed Counsel to New London Pharmacy Inc.*

By: */s/     Ralph E. Preite*  
      Ralph E. Preite, Esq.  
333 Earle Ovington Boulevard  
Uniondale, New York 11553  
(516) 357-3802  
rpreite@cullenllp.com  
    and  
Michelle McMahon, Esq.  
Kyriaki Christodoulou, Esq.  
One Battery Park Plaza, 34th Floor  
New York, New York 10004  
(212) 701-4170  
mmcmahon@cullenllp.com  
kchristodoulou@cullenllp.com